UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LENA KADDURA<br>  7800 S. Rainbow Blvd. # 2113<br>  Las Vegas, NV 89139,<br><br>MEGAN McKEE<br>  309 Summit Pointe Way<br>  Atlanta, GA 30329,<br><br>MORRIGAN PHILLIPS<br>  4033 New Hampshire Ave, NW<br>  Washington, DC 20011,<br><br>JOSH RAISLER COHN<br>  P.O. Box 3201<br>  Washington, DC 20010,<br><br>        Plaintiffs,<br><br>  v.<br><br>JOHN DOE OFFICERS #1-5<br>  Metropolitan Police Dept.<br>  Washington, DC,<br><br>DISTRICT OF COLUMBIA<br>  1350 Pennsylvania Avenue, NW<br>  Washington, DC 20004<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:<br><br><br><br><br><br>Jury Trial Demanded |

**COMPLAINT**

**(Police Misconduct: Violation of rights under the Constitution of the United States
and the common law of the District of Columbia.)**

1.  This is an action for damages and other relief by individuals injured when police without cause soaked Inaugural parade demonstrators and bystanders with streams of pepper spray.

The plaintiffs were in the area of 14th Street and Pennsylvania Avenue, N.W., in Washington, D.C., at the time of the parade following the second Inauguration of President George W. Bush on January 20, 2005.  Plaintiffs were outside the fence enclosing the restricted parade area, at all times in areas freely open to the general public.  After isolated groups of protesters pulled down some short fence sections (that were quickly restored), police along an extensive stretch responded for the next several hours by directing high-power streams of pepper spray from backpack equipment at any groups or individuals who ventured close to the fence.  Regardless of individuals' conduct, anyone who got "too close" was sprayed, directly in the face at times, and the caustic spray caused intense pain on contact.  This police action was an intentional, reckless and outrageous application of force to stop plaintiffs' freedom of movement, constituting interference with lawful assembly and expression, unreasonable seizure (including excessive force), and common law assault and battery and intentional infliction of emotional distress.  Plaintiffs accordingly seek damages, fees, costs, and other appropriate relief.

## JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367.  Plaintiffs bring this action under 42 U.S.C. § 1983 to vindicate rights established by the First and Fourth Amendments to the United States Constitution.  Plaintiffs also seek relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.  Plaintiffs' common law claims arise from the same occurrences as their constitutional claims and are within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3.  Venue is proper in this district under 28 U.S.C. § 1391(b).  The events or omissions giving rise to plaintiffs' claims occurred in this judicial district.

## PARTIES

4. Plaintiff Lena Kaddura is a resident of Nevada. She was living in Georgia in January 2005 and traveled to Washington, D.C., to visit friends and view Inaugural events.

5. Plaintiff Megan McKee is a resident of Georgia. In January 2005 she was living and working in the District of Columbia.

6. Plaintiff Morrigan Phillips is a resident of the District of Columbia.

7. Plaintiff is Josh Cohn is a resident of the District of Columbia.

8. Defendants John Does #1-5 are officers of the Washington Metropolitan Police Department (MPD) who were on duty at 14th Street and Pennsylvania Avenue, N.W., in the afternoon of January 20, 2005, and showered the plaintiffs with pepper spray. They are sued in their individual capacities.

9. Defendant District of Columbia is a municipal corporation, the local government of Washington, D.C.

## FACTS

10. On Inauguration Day, 2005, all plaintiffs arrived in the early afternoon in the area near the end of the route followed by the traditional parade from the U.S. Capitol to the White House, where Pennsylvania Avenue reaches Freedom Plaza, Pershing Park, and the Departments of Commerce and Treasury.

11. Along the parade route sections of temporary chain link fences about ten feet high linked together to form a perimeter separating open public space from restricted viewing areas near the Avenue, entered only through police checkpoints. Plaintiffs were at all times outside the fenced area. Plaintiffs Kaddoura and McKee had visited other demonstration sites that day and carried small signs. They stood in line to enter the viewing area through a checkpoint near 14th and

Pennsylvania but abandoned the goal when the line was long and slow. Plaintiffs Phillips and Cohn had also visited demonstration sites but carried no signs and never tried to enter the restricted viewing area. All plaintiffs ended up on the sidewalk on the south side of the Willard Hotel facing Pershing Park. As the parade route was on the avenue south of Pershing Park, plaintiffs were far from it.

12. Plaintiffs Cohn and Phillips attended the inauguration events as part of the Comms Network, a group of volunteers concerned about the well-being of people observing and protesting the inauguration events. They communicated with each other and other Comms Network volunteers and medic stations by two-way radio to share information about needs for medical or other assistance.

13. Along the fence line in this area, MPD officers dressed in riot gear stood on the south side of the fence and faced those on the north. These officers wore uniforms with MPD patches. Plaintiffs were never close enough to the officers to see name badges, if the officers wore any. Many officers carried tanks on their backs connected by hoses to nozzles in their hands.

14. About 3:15 p.m. unknown persons pushed over several sections of fence (each about four feet wide) and police responded by massing at those spots in a shoulder-to-shoulder line facing the fence. No members of the outside crowd tried to enter through the breaches and the police quickly restored the fence sections to their upright position without incident.

15. After the two sections of the fence were back in place, without any apparent reason or warning the defendant officers, along with many other officers facing a long stretch of the fence, pointed their nozzles towards the fence and began sprayed high-volume streams of pepper spray through the fence mesh onto the faces, skin and clothing of individuals and groups that approached the fence on the other side. This practice of intermittent spraying continued for several hours,

forcing anyone in the area to stay away from the fence. The intermittent and unpredictable bursts of caustic spray drenched the plaintiffs and many other individuals who were close by and affected still more as a chemical mist drifted from the fence area.

16. Plaintiff Kaddoura stood in the free area about ten feet back from one of the downed and restored fence sections. Some around her chanted or carried signs. Police gave no order to move back. She posed no threat to the police or the fence yet she was sprayed directly in the face as she took photos of the events. The high pressure stream hit her open mouth and eyes causing burning sensations that lasted for hours. No official helped her.

17. Plaintiff McKee also was sprayed directly in the face. She was also ten or more feet away from the fence and had moved back further, posing no threat to the police or the fence. Again, police gave no order to demonstrators or bystanders to move, did not warn of the impending spraying, and no official helped her after she was drenched.

18. Volunteer medics helped plaintiffs Kaddoura and McKee to flush their eyes but that gave only temporary relief. The spray ended their freedom of movement, moved them back from where they watched and held their signs, and forced them to leave the area to get help. They suffered pain for hours.

19. Plaintiffs Cohn and Phillips were near another fence section that was briefly pushed over and quickly restored, and where police officers also without warning began a practice of spraying intermittently through the fence at anyone who came close on the other side. For several hours both assisted others who had been sprayed by pouring water into their burning eyes and directing them to nearby medics.

20. Plaintiff Cohn's head and clothing were soaked when he was sprayed from behind as he knelt to assist someone else. At no point did plaintiff Cohn threaten the officers or the fence.

21. Plaintiff Phillips escorted several persons in distress from the spray towards medical help and was herself sprayed directly by defendant officers as her back was to the fence to shield the others. The high-pressure pepper spray soaked her coat, hat, scarf, and skin. At one point a thick stream hit plaintiff Phillips in her eyes and mouth and she required assistance from medics stationed at the top of stairs leading to an entrance of the Willard Hotel to regain her breath and ease the stinging in her eyes enough that she could continue helping others in worse condition than she was. At no point did plaintiff Phillips threaten the MPD officers or the security of the fencing.

22. So many demonstrators and bystanders needed help in the period of police spraying that volunteer medics several times ran out of and had to replenish supplies of neutralizing agents.

23. All plaintiffs were sprayed by MPD officers who acted under color of law and within the scope of their employment.

24. On information and belief, the officers' use of chemical spray was pursuant to the direction of a District of Columbia policymaker (or official exercising delegated policymaking authority) or pursuant to a District of Columbia policy or custom. That direction, policy or custom permitted the use of chemical weapons against members of the public acting lawfully in mass gatherings. On information and belief this policy or custom may be found in official written materials or oral directions of a District of Columbia policymaker or other official exercising delegated policymaking authority.

25. On information and belief, District of Columbia police officials approved and ratified the actions of officers on the scene who directed repeated sprays at innocent demonstrators and bystanders, by accepting the dangerously reckless spraying, taking no steps to stop it and instead allowing it to continue for a long period.

26. The officers intended as a means of crowd control to injure or severely frighten persons in the area near the fence where plaintiffs were standing and they had equipment capable of doing so – spraying long-distance streams of pepper spray that causes long-lasting and painful burning sensations upon contact.

27. Plaintiffs suffered numerous injuries and damages, including the following, as a direct and proximate result of (1) the customs, policies, and practices of the District of Columbia (including the actions of District of Columbia policymakers or officials exercising delegated policymaking authority), and (2) the actions of the defendant District of Columbia police officers: bodily injuries; personal and reputational injuries, including pain and suffering, humiliation, anguish, and emotional distress; and monetary costs, including but not limited to costs of neutralizing and cleansing supplies and the clothing whose value was destroyed by chemical spray. Plaintiffs were also injured by the violation of their constitutional right peaceably to assemble to petition their government, and by deterring them from, or making them anxious about, exercising that right in the future.

28. The notice requirement of D.C. Code § 12-309 (2001) has been satisfied by timely letters sent by counsel and acknowledged by the District of Columbia on behalf of all plaintiffs and also by reports and records of the MPD including results of investigations by the Special Operations Division and also by the Force Investigation Team in the MPD Office of Professional Responsibility.

**CLAIM I: VIOLATION OF FIRST AMENDMENT RIGHTS**
**(John Doe officers #1-5)**

29. On the facts alleged above, the defendant John Doe MPD officers are liable to the plaintiffs for violation under color of law of their constitutional rights to freedom of speech,

assembly, and association. These rights are protected by the First Amendment to the United States Constitution and their violation is made actionable by 42 U.S.C. § 1983.

### CLAIM II: VIOLATION OF FOURTH AMENDMENT RIGHTS
### (John Doe officers #1-5)

30. On the facts alleged above, the defendant John Doe MPD officers are liable to the plaintiffs for violation under color of law of their constitutional right to be free from unreasonable seizure (including excessive force). This right is protected by the Fourth Amendment to the United States Constitution and its violation is made actionable by 42 U.S.C. § 1983.

### CLAIM III: VIOLATION OF FIRST AMENDMENT RIGHTS
### (District of Columbia – Municipal Liability)

31. On the facts alleged above, defendant District of Columbia is liable to the plaintiffs for violation under color of law of their constitutional rights to freedom of speech, assembly, and association. These rights are protected by the First Amendment to the United States Constitution and their violation, when caused by the action or inaction of a municipal policymaker or by a municipal custom or policy, is made actionable by 42 U.S.C. § 1983.

### CLAIM IV: VIOLATION OF FOURTH AMENDMENT RIGHTS
### (District of Columbia – Municipal Liability)

32. On the facts alleged above, defendant District of Columbia is liable to the plaintiffs for violation under color of law of their constitutional right to be free from unreasonable seizure (including excessive force). This right is protected by the Fourth Amendment to the United States Constitution and its violation, when caused by the action of a municipal policymaker or by a municipal custom or policy, is made actionable by 42 U.S.C. § 1983.

### CLAIM V: ASSAULT AND BATTERY
### (John Doe officers #1-5)

33. On the facts alleged above, the defendant John Doe MPD officers are liable to

plaintiffs under District of Columbia law for assault and battery when without any lawful basis they sprayed plaintiffs with large quantities of pepper spray at close range causing pain and suffering, anguish, humiliation and emotional distress.

### CLAIM VI: ASSAULT AND BATTERY
#### (District of Columbia re*spondeat superior* liability)

34.  On the facts alleged above, the defendant District of Columbia is liable to plaintiffs under District of Columbia law for assault and battery when its employee MPD officers acting in the scope of their employment but without any lawful basis sprayed plaintiffs with large quantities of pepper spray at close range causing pain and suffering, anguish, humiliation and emotional distress.

### CLAIM VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
#### (John Doe officers #1-5)

35.  On the facts alleged above, the defendant John Doe MPD officers are liable to plaintiffs under District of Columbia law for intentional infliction of emotional distress when without any lawful basis they sprayed plaintiffs with extreme and outrageous volumes of pepper spray, intentionally or recklessly to cause them – and, in fact, causing -- severe emotional distress.

### CLAIM VIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
#### (District of Columbia re*spondeat superior* liability)

36. On the facts alleged above, the defendant District of Columbia is liable to plaintiffs under District of Columbia law for intentional infliction of emotional distress when its employee MPD officers acting in the scope of their employment but without any lawful basis sprayed plaintiffs with extreme and outrageous volumes of pepper spray, intentionally or recklessly to cause them – and, in fact, causing -- severe emotional distress.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs request that the Court:

(a) ENTER JUDGMENT declaring that the actions of the defendants violated the constitutional rights of the plaintiffs;

(b) ENTER JUDGMENT holding all defendants liable to plaintiff for compensatory damages in an amount appropriate to the proof adduced at trial;

(c) ENTER JUDGMENT holding defendant John Doe officers liable to plaintiffs for punitive damages in an amount appropriate to the proof adduced at trial;

(d) ENTER JUDGMENT imposing injunctive relief that (1) bars the District of Columbia from using chemical weapons to move crowds without warning or adequate cause, and (2) requires that the District of Columbia train and supervise police officers in the proper use of chemical weapons.

(e) AWARD to plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

(f) GRANT such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Trial by jury is demanded on all issues for which a jury trial is available.

Respectfully submitted,

_____
Arthur B. Spitzer, D.C. Bar No. 235960
Frederick V. Mulhauser, D.C. Bar No. 455377
American Civil Liberties Union
    of the National Capital Area
1400 20th Street, N.W. Suite 119
Washington, DC 20036
(202) 457-0800;  fax (202) 452-1868

Counsel for Plaintiffs

January 19, 2006